**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**William Allen GREGG, Defendant–Appellant.**

**No. 07CA2511.**

Colorado Court of Appeals, Div. I.

July 21, 2011.

Rehearing Denied Dec. 8, 2011.

---

John W. Suthers, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Joseph Paul Hough, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CARPARELLI.

Defendant, William Allen Gregg, appeals the judgment of conviction entered upon jury verdicts finding him guilty of three counts of aggravated robbery. Defendant also appeals his adjudication as a habitual criminal. We affirm.

## I. Background

Defendant was found guilty of robbing three banks. During the first robbery, he handed the teller a folded, handwritten note informing the teller that he had a stick of dynamite and instructing her to give him all the money at her station. After the teller read the note, defendant told her, "[J]ust do it," and "[D]on't make me blow up the bank." After the teller gave defendant one canister of cash, defendant demanded a second canister, which the teller gave him. Defendant left the bank on foot.

Ten days later, defendant robbed a second bank. During the second robbery, defendant again handed the teller a folded, handwritten note. This note said defendant "would shoot her" if she did not comply with his demand for all the money at her station. After the teller read the note, defendant told her, "I will shoot you." After the teller gave defendant money from one drawer, he demanded money from a second drawer. The teller gave him the additional money and defendant left.

Shortly after the second robbery, defendant led police on a high-speed chase, crashed his vehicle, and was apprehended. Police found the amount of money stolen from the second bank in defendant's pocket and found the robbery note in his car. The teller was brought to the scene and identified defendant as the robber.

About eleven weeks later, defendant robbed a third bank. During the third rob-bery, defendant again handed a folded, handwritten note to the teller. The note said, "Give me all the money in the first and second drawer. Cooperate. It will take no more than a couple of minutes. If not, I'll put a bullet in your head and send you to hell." After the teller gave defendant the money from the first drawer, defendant demanded the money from the second drawer. Defendant left after the teller gave him the additional money. The record shows that defendant left in a vehicle other than the one he wrecked after the second robbery.

## II. Consolidation

Defendant contends that evidence in each case would not have been admissible in separate trials, and, consequently, that the trial court erred when it consolidated the three aggravated robbery cases for trial. We disagree.

### A. Law

Subject to the relief afforded in Crim. P. 14, a trial court may order two or more criminal complaints to be tried together if the offenses could have been joined in a single complaint. Crim. P. 13. Two or more offenses may be charged in the same indictment or information if the offenses are of the same or similar character or are based on two or more acts or transactions connected together or parts of a larger scheme or plan of action. Crim. P. 8(a)(2); *see also People v. Gross,* 39 P.3d 1279, 1282 (Colo.App.2001).

When determining whether multiple offenses qualify for consolidation, " 'it is not essential that the means of committing the other crimes replicate in all respects the manner in which the crime charged was committed.' " *People v. Owens,* 97 P.3d 227, 231 (Colo.App.2004) (quoting *People v. McKibben,* 862 P.2d 991, 993 (Colo.App.1993)).

The decision to consolidate cases is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Gross,* 39 P.3d at 1282. Reversal on the basis of the consolidation of offenses is not justified unless the defendant demonstrates actual prejudice as a result of

the jury's inability to separate the facts and legal theories applicable to each offense. *People v. Williams,* 899 P.2d 306, 313 (Colo. App.1995). There is no prejudice where evidence of each transaction would be admissible in separate trials. *Gross,* 39 P.3d at 1282.

### B. Trial Court's Ruling

Here, the trial court was required to first determine whether the evidence of the aggravated robberies would be admissible in separate trials. Relying on *Owens,* the court found that the evidence of each aggravated robbery offense would be admissible in separate trials and that the offenses were sufficiently similar to consolidate the cases for trial. We conclude the court did not abuse its discretion.

### C. Analysis and Conclusions

■ The three aggravated robberies occurred within months of each other and each involved death threats during robberies of banks in the same city. *See Owens,* 97 P.3d at 232 (robberies that occurred within ten days of each other and within a thirty-five-block area were similar for consolidation purposes). In each robbery, the robber presented a folded, handwritten note threatening the teller's life and demanding money at the teller's station. The tellers testified that, when defendant threatened them, he either had his hand in his jacket pocket or carried a bag and claimed it contained dynamite. In each robbery, the robber demanded additional cash from the teller's second cash repository. Although one teller initially misidentified defendant in a photo lineup, each of the three tellers identified defendant in person as the individual who robbed his or her bank. *See id.*

The robberies, while not the same in all respects, were sufficiently similar to permit the evidence concerning them to be admitted in one consolidated trial. *See id.; Gross,* 39 P.3d at 1282; *Williams,* 899 P.2d at 313; *People v. Early,* 692 P.2d 1116, 1119 (Colo. App.1984).

We reject defendant's argument that the court committed reversible error because it did not make specific factual findings regarding the similarities of the robberies. *Cf. People v. Warren,* 55 P.3d 809, 814 (Colo. App.2002) (holding that, in absence of specific factual findings, the trial court's ruling that evidence was admissible implicitly found that such evidence met the test for admission under CRE 404(b)); *People v. McGraw,* 30 P.3d 835, 838 (Colo.App.2001) (while it is a better practice for a trial court to explicitly find by a preponderance of evidence that the defendant committed the other act, the court is only required to be satisfied of that fact); *People v. Copeland,* 976 P.2d 334, 337 (Colo. App.1998) ("Having admitted the evidence, the trial court implicitly found that its probative value was not substantially outweighed by the danger of unfair prejudice."), *aff'd,* 2 P.3d 1283 (Colo.2000).

We also reject defendant's argument that because the evidence of his guilt of the second robbery was more substantial than that of the first and third robberies, he was unfairly prejudiced by the consolidation of the trials. *See Owens,* 97 P.3d at 232 ("We reject defendant's assertion that, inasmuch as he had confessed to only one incident, it was unfair to try him for all three incidents in one trial.") (citing *United States v. Cox,* 934 F.2d 1114, 1120 (10th Cir.1991) (severance of counts not required because evidence was stronger on some counts)).

With varying degrees of confidence, each teller identified defendant as the perpetrator. The prosecution also introduced surveillance photographs and videos of each robbery, including surveillance footage that included the robber's face. There is no evidence that the jury was unable to follow the court's instructions to consider the evidence separately, including the identification of defendant as the robber, and legal principles applicable to each offense. *See People v. Knight,* 167 P.3d 147, 151 (Colo.App.2006) (upholding the trial court's consolidation where the court "instructed the jury not to let its decision on one count influence its decision on any other, and there is no indication that the jury was unable to separate the facts and legal principles applicable to each offense").

We conclude that the evidence of the three robberies would have been admissible in sep-

arate trials. Accordingly, we conclude the trial court did not abuse its discretion when it consolidated the three cases for trial.

### III. Sufficiency of the Evidence

■ Defendant also contends that there is insufficient evidence that he used or threatened to use a real or simulated weapon to support his aggravated robbery convictions for the second and third robberies. We disagree.

As relevant here, to prove aggravated robbery, the prosecution was required to prove beyond a reasonable doubt that during the robbery or immediate flight therefrom, defendant possessed "any article used or fashioned in a manner to lead any person who [was] present reasonably to believe it to be a deadly weapon or represent[ed] verbally or otherwise that he [was] then and there so armed." Section 18–4–302(1)(d), C.R.S.2010.

■ We review de novo whether sufficient evidence supports a verdict. *Dempsey v. People,* 117 P.3d 800, 807 (Colo.2005). When the sufficiency of the evidence is challenged on appeal, we must determine whether the evidence, viewed as a whole, and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945, 950 (Colo.1988).

Here, defendant argues that there was no evidence that he brandished or represented that he had a weapon during the second and third robberies. According to defendant, the evidence was insufficient because the notes used in the second and third robberies said, "I will shoot you," and "I'll put a bullet in your head and send you to hell," but did not constitute weapons themselves, nor did they say affirmatively that defendant possessed a weapon at that time. We are not persuaded.

Both tellers testified that after reading defendant's notes, they believed that their lives were in danger. The teller in the second robbery testified that defendant had his right hand in his pocket when he said, "I will shoot you." The teller in the third robbery testified that defendant approached the coun-

ter with both hands in his pockets and kept his left hand in his pocket during the robbery.

Defendant's representation in writing and orally that he would harm the tellers, considered in the light most favorable to the prosecution, is sufficient to support the aggravated robbery convictions. The undisputed testimony at trial shows that defendant had his hand in his jacket pocket to make the tellers reasonably believe he had a gun and that defendant handed the tellers notes threatening to shoot one of the tellers and put a bullet in the other teller's head.

We thus conclude there was sufficient evidence to support the convictions for the second and third robberies.

### IV. Habitual Criminal Conviction

■ Defendant contends the evidence is insufficient to support the trial court's judgment finding him guilty of the habitual criminal count. Specifically, he argues that the trial court erred when it admitted and relied on unauthenticated and uncertified documents to prove he had a felony conviction in California. We disagree.

Defendant was charged as a habitual criminal under section 18–1.3–801(2), C.R.S.2010, which requires proof of three prior felony convictions. To prove the prior convictions, the prosecution must prove beyond a reasonable doubt that the defendant is the person named in the convictions. Section 18–1.3–803(5)(b), C.R.S.2010; *People v. Mascarenas,* 666 P.2d 101, 110 (Colo.1983); *People v. Martinez,* 83 P.3d 1174, 1179 (Colo.App.2003).

A duly authenticated copy of the record of former convictions and judgments of any court of record for any of the alleged prior crimes is prima facie evidence of the convictions and may be used in evidence against the defendant. Section 18–1.3–802, C.R.S. 2010. However, the statute does not state that such evidence is the *only* evidence by which the prosecution may provide prima facie proof of a prior conviction. For example, the prosecution may also satisfy its burden of proof by using certified copies of public records or documents that are admissible as public records under CRE 901(b)(7)

or self-authenticating documents under CRE 902(1) and (4). *Martinez*, 83 P.3d at 1179; *People v. Bielecki*, 964 P.2d 598, 608–09 (Colo.App.1998).

Defendant does not challenge the authenticated and certified documents showing he had two prior Colorado felony convictions. He does, however, challenge the trial court's finding beyond a reasonable doubt that he has a prior felony conviction in California.

## A. The Prosecution's Evidence

To establish defendant's California felony conviction, the prosecution presented the testimony of defendant's former probation officer and the documents she had received from California regarding defendant's conviction there. The probation officer testified that she was assigned to supervise defendant's probation through the Interstate Compact Act, which allows for supervision of probation in a different state than the one in which the conviction entered. She said that when a probationer applies for out-of-state probation, the Colorado probation department reviews the application, the district court in the Colorado county where the probationer intends to reside assigns a criminal case number, and the case is assigned to a probation officer for supervision.

The probation officer also testified that when she receives a request through the interstate compact, it includes a set of documents, which usually includes a request for supervision, a request for residence check, sentencing information from the state, presentence reports, complaints, and the court order requiring probation.

The probation officer identified the documents that she had received through the interstate compact regarding defendant's California conviction, and she testified that the probation department keeps them in the normal course of business and used them to supervise defendant's probation.

The documents included an "Order Granting Probation" from the Superior Court of California, County of Lake, filed on May 2, 2000, suspending defendant's sentence for "felony-burglary second degree" pending his completion of three years probation. The order states that the felony conviction resulted from defendant's guilty plea. The documents also included a California probation officer's report and recommendation, which identified defendant by his full name, date of birth, and Social Security number.

## B. Trial Court Ruling

At trial, the prosecution conceded that the documents were not certified or authenticated and were not admissible "pursuant to [CRE] 902 or the exceptions, as stated in the [*People v. Shepherd*, 43 P.3d 693 (Colo.App. 2001)] case." Indeed, the documents were not certified, self-authenticated, embossed with a seal, or notarized, and did not contain a picture of defendant.

Nevertheless, the prosecution argued that the documents were part of the business records kept by the probation department, are commonly kept, and had been kept and received in that matter. The prosecution asked the court to admit them pursuant to the business records exception to the hearsay rule because they were documents kept as part of the Interstate Compact Act probation file. Over defendant's objection, the court admitted the documents "on that limited basis only."

The trial court then found beyond a reasonable doubt that defendant had been convicted of a felony in California.

As to the California case specifically ... while the records that have been received from the probation officer as part of her probation file would indicate that he had a conviction enter, I'm finding that they do support the conviction as well as the fact that when [defendant] met with [the probation officer], there was discussions [sic] about the conviction, even though there was not clearly an admission on his part that he had been convicted of that case. Nonetheless, he was here on interstate compact, as previously noted. I believe that there is enough proof by proof beyond a reasonable doubt to convict him of that allegation as well.

## C. Authentication

Defendant contends that the California documents were inadmissible because section

18–1.3–802 requires duly authenticated or certified copies of public records, and the documents admitted were not sufficiently authenticated. We are not persuaded.

Section 18–1.3–802 provides that duly authenticated records of former convictions are prima facie evidence of the convictions, but it does not prescribe a particular means of authenticating records. *See Martinez*, 83 P.3d at 1179; *Bielecki*, 964 P.2d at 608–09.

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." CRE 901(a). Public records or reports may satisfy this requirement with evidence that "a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept." CRE 901(b)(7); *see also People v. Deskins*, 904 P.2d 1358, 1362 (Colo.App.1995) (holding that Kansas Bureau of Investigation record of the defendant's conviction was admissible as a public record under CRE 901(b)(7)), *aff'd in part and rev'd in part on other grounds*, 927 P.2d 368 (Colo.1996).

Whether the proponent has established a proper foundation regarding the authenticity of a document is a matter within the sound discretion of the trial court. *See People v. Gilmore*, 97 P.3d 123, 129 (Colo.App.2003) (affirming the admission of documents under CRE 807 to establish the defendant's residence); *see also People v. Crespi*, 155 P.3d 570, 574 (Colo.App.2006) (if a reasonable jury could decide that physical evidence is what its proponent claims it to be, a trial court should allow the evidence to be presented to the jury).

Here, the prosecution conceded that the documents were not *self-authenticating*, and presented the probation officer's testimony regarding their authenticity and the contents of the documents. The probation officer testified about the judicial process by which supervision of probation is transferred under the interstate compact. She also testified that she received the California documents as the basis for supervising defendant's probation.

The "Order Granting Probation" is on a form "approved by the Judicial Council of California" and includes a stamp indicating that it was filed in the Superior Court, County of Lake, on May 2, 2000. The probation officer testified that she received the order when she was assigned to supervise defendant's California probation in Colorado. She also testified that she discussed with defendant his California burglary conviction, the circumstances that led to the crime, and how the conviction could result in incarceration.

Defendant does not allege that he was not convicted of burglary in California, that he was not subject to probation, or that the probation order was inauthentic. Instead, defendant challenges only whether the prosecution met its burden of proof.

Based on this record, we conclude that the trial court did not abuse its discretion when it found that the prosecution laid a sufficient foundation regarding the authenticity of the documents.

### D. Business Records Exception

Defendant next contends that section 18–1.3–802 precludes the admission of evidence of a prior conviction through the business records exception to the hearsay rule. Alternatively, defendant argues that even if business records were admissible, the records here were inadmissible because the prosecution did not present a sufficient foundation. We need not consider whether the records are admissible under the business records exception because we conclude that they are admissible under the public records exception to the hearsay rule. *See Cole v. Hotz*, 758 P.2d 679, 682 (Colo.App.1987) (appellate court may affirm trial court on grounds other than those relied on by trial court).

### E. Public Records Exception

CRE 803(8) provides an exception to the hearsay rule for public records and reports. This rule states, in relevant part:

Unless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (B) matters

observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel [are not excluded by the hearsay rule, even though the declarant is available as a witness].

▪ As a general rule, the proponent of admitting a public record into evidence as an exception to the hearsay rule is not required to provide foundation testimony about the way in which the public record was generated or maintained. *See, e.g., United States v. Regner*, 677 F.2d 754, 762–63 (9th Cir.1982) (Ferguson, J., dissenting) (citing J. Weinstein & M. Berger, 4 *Weinstein's Evidence* ¶ 803(6)(02), at 803–151 to –52 & ¶ 803(8)(01), at 803–191 (1979)).

Here, defendant does not allege that the authenticated probation order is factually inaccurate, and there is no reason to believe that the source of the information, the Superior Court of Lake County, California, lacked trustworthiness or had any motive to falsify the order. *See United States v. Weiland*, 420 F.3d 1062, 1076 (9th Cir.2005) (holding that documents in a "penitentiary packet" were admissible under Fed.R.Evid. 803(8) to prove the defendant's prior conviction); *see also People v. Moore*, —— P.3d ——, ——, 2010 WL 5013681 (Colo.App.2010) (penitentiary packets consisting of prison and court records related to prior convictions are admissible during habitual offender trials); *Copeland*, 976 P.2d at 341 (penitentiary packets admissible to prove habitual criminal charges).

Consequently, the authenticated probation order is admissible under the CRE 803(8)(B) public records exception to the hearsay rule if the order sets forth matters the court observed "pursuant to duty imposed by law as to which matters there was a duty to report." "It is undisputed that sentencing a defendant is a duty imposed on the courts by law." *Trawick v. State*, 845 A.2d 505, 509 (Del.2004) (holding that an authenticated record of conviction is admissible under the public records exception to the hearsay rule). Here, the probation order sentenced defendant to probation for his felony conviction.

Under the plain language of the public records exception, the order is admissible. *See also United States v. Vidaure*, 861 F.2d 1337, 1341 (5th Cir.1988) ("penitentiary packet" indicating prior conviction admissible under public records exception); *People v. Dunlap*, 18 Cal.App.4th 1468, 1475–76, 23 Cal.Rptr.2d 204 (1993) ("rap sheets" from law enforcement database were admissible under public records exception).

Therefore, we conclude that the trial court did not err when it admitted the probation order because the order was admissible under the public records exception to the hearsay rule.

## F. Sufficiency of the Evidence

Defendant also contends that the evidence was insufficient to identify him as the person convicted in California and to establish that the conviction was for a felony. We are not persuaded.

The California probation order identifies the defendant in that matter as "William A. Gregg" and the California probation report identifies the defendant as "William Allen Gregg." Both documents are assigned the same case number by the Superior Court of California, County of Lake. In addition, the probation report includes the defendant's date of birth and Social Security number, which are identical to defendant's date of birth and Social Security number in the case before us, as well as the two prior Colorado convictions.

The California probation order also states in paragraph 1 that defendant was convicted of "felony-burglary second degree" after defendant pled guilty. The probation report contains identical information.

Accordingly, we conclude that the evidence is sufficient to support defendant's habitual criminal conviction.

The judgment is affirmed.

Judge TAUBMAN and Judge GABRIEL concur.